[No. B156359. Second Dist., Div. Seven. Dec. 19, 2002.]

GEORGE KAPSIMALLIS et al., Plaintiffs and Appellants, v.
ALLSTATE INSURANCE COMPANY, Defendant and Respondent.

668

## Counsel

Gruber & Kantor, Daniel S. Gruber, Glenn R. Kantor and Joel A. Cohen; Law Officers of Howard A. Snyder and Howard A. Snyder for Plaintiffs and Appellants.

Luce, Forward, Hamilton & Scripps, Peter H. Klee, Marc J. Feldman; Arnold & Porter and Lawrence A. Cox for Defendant and Respondent.

## OPINION

**PERLUSS, J.**—George and Priscilla Kapsimallis, Ted Kingsley, Charles Fontaine and Anne Splaver, individually and as proposed class representatives, filed a lawsuit against Allstate Insurance Company, alleging Allstate had intentionally denied valid claims for benefits after the Northridge earthquake by improperly using January 17, 1994, as the date of loss for all claimants to establish whether a suit had been commenced within one year after a loss, as required by Allstate's policies, rather than determining the date of loss individually based on when the claimant reasonably should have discovered appreciable damage caused by the earthquake.

The trial court, assuming Allstate had in fact used January 17, 1994, as the date of loss for all claimants, found the practice proper as a matter of law and granted a motion for judgment on the pleadings, holding plaintiffs could not allege a breach of contract, bad faith or a Business and Professions Code section 17200 violation. Because we conclude the analysis in *Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674 [274 Cal.Rptr. 387, 798 P.2d 1230] (*Prudential-LMI*) is fully applicable to cases involving cataclysmic damage such as the Northridge earthquake and precludes determining "inception of the loss" solely by the date of the occurrence of the physical event causing the loss, we reverse.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiffs and the class they propose to represent are homeowners whose residences were insured, including earthquake coverage, through Allstate at the time of the Northridge earthquake. As required by Insurance Code section 2071,[2] their policies provide that an insured has one year from the date of the loss to file an action against the insurer: "No suit or action may be brought against us [Allstate] unless there has been full compliance with all the policy terms. Any suit or action must be brought within one year after the loss."

Alleging causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing and unfair, unlawful and/or fraudulent business practices in violation of Business and Professions Code section 17200, plaintiffs contend Allstate used the one-year suit provision improperly to deny claims for earthquake benefits that should have been paid.

---

[1]Because a motion for judgment on the pleadings by the defendant is equivalent to a demurrer, we treat all properly pleaded facts in the operative complaint as true. (*Smiley v. Citibank* (1995) 11 Cal.4th 138, 146 [44 Cal.Rptr.2d 441, 900 P.2d 690]; *Mack v. State Bar* (2001) 92 Cal.App.4th 957, 961 [112 Cal.Rptr.2d 341].)

[2]All further statutory reference are to the Insurance Code unless otherwise indicated.

Specifically, they assert Allstate wrongfully used January 17, 1994, the date of the earthquake, as the beginning of the one-year period for all claimants, rather than determining the inception of the loss individually for each claimant based on when he or she reasonably should have discovered appreciable damage caused by the earthquake.

Plaintiffs and the proposed class fall into two categories of insureds: original claimants and supplemental claimants. The original claimants, whom Fontaine and Splaver propose to represent, are insureds who reasonably discovered appreciable damage to their homes and filed initial claims for policy benefits with Allstate more than one year after the earthquake. These original claims were denied as untimely based on the one-year suit provision. The supplemental claimants, whom the Kapsimallises and Kingsley propose to represent, are insureds who filed claims for policy benefits with Allstate within one year of the earthquake. Some received payment from Allstate for damages; others were informed the damage to their home was below their policy's deductible. These insureds later discovered additional damage and filed supplemental claims with Allstate. The total time that had elapsed between January 17, 1994 and the date of their initial claim, plus the time between conclusion of their initial claim and the date of their supplemental claim, exceeded one year. Accordingly, Allstate denied the supplemental claims as untimely based on the one-year suit provision.

To facilitate resolution of the litigation, the trial court determined certain legal issues could be decided early in the case, before the issue of class certification was addressed.[3] The court directed the parties to brief the following issue: "As a matter of law, can the blanket use of January 17, 1994 as the 'triggering occurrence' date [with or without exceptions] constitute a breach of contract, bad faith and/or an unfair, unlawful or fraudulent business practice."[4] After hearing argument and considering the parties' briefs, the trial court issued a statement of decision, holding the date of loss applicable to all claimants was January 17, 1994, the date of the earthquake. The court found "the analysis of the 'date of the inception of the loss' applied in *Prudential-LMI v. Superior Court*[, *supra*,] 51 Cal.3d 674, in which the inception of loss was defined as that point in time in which

---

[3]After Allstate had answered the complaint, the trial court asked the parties whether case dispositive legal issues could be addressed early in the litigation. The parties identified two such issues. The court then set a hearing date and ordered the parties to file briefs on those issues, effectively directing the filing of a motion for judgment on the pleadings. (Code Civ. Proc., § 438, subd. (b)(2).)

[4]The trial court also directed the parties to submit briefs on "[w]hat notice is legally sufficient to constitute notice of applicable time limits in policies pursuant to the applicable insurance code sections and case law" and resolved that issue in Allstate's favor. Plaintiffs do not raise that issue on appeal.

appreciable damage occurs, is applicable only to progressive property damage (such as from expansive soil as in *Prudential*) rather than cataclysmic damage (such as an earthquake)." The court concluded "as a matter of law, the use of January 17, 1994 as the triggering occurrence does not constitute a breach of contract, bad faith and/or a violation of Business and Professions Code § 17200." The court entered judgment on the pleadings in favor of Allstate.

Plaintiffs, individually and as proposed class representatives, filed a timely notice of appeal.

## CONTENTIONS

Plaintiffs contend the trial court improperly found the "inception of the loss" analysis in *Prudential-LMI, supra,* 51 Cal.3d 674, inapplicable to cases involving cataclysmic damage such as the Northridge earthquake.

## DISCUSSION

### 1. *Standard of Review*

■ A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action. (Code Civ. Proc., § 438, subd. (c)(3)(B)(ii).) A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review. (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515 [101 Cal.Rptr.2d 470, 12 P.3d 720]; *Mack v. State Bar, supra,* 92 Cal.App.4th 957, 961.) All properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law; judicially noticeable matters may be considered. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; *Mack,* at p. 961.)

### 2. *The Trial Court Erred by Finding Uniform Use of January 17, 1994, as the Date of the Inception of the Loss for All Claimants Was Proper*

#### a. *Definition of Inception of the Loss in Prudential-LMI*

■ Section 2071 sets forth the standard form required for all fire insurance policies, which includes insurance against loss caused by earthquake. (§§ 102, subd. (a), 2070.) This standard form provides that any action on the policy against the insurer must be commenced within 12 months after the "inception of the loss." (§ 2071 ["No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity

unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss"].)

In *Prudential-LMI, supra*, 51 Cal.3d 674, the Supreme Court considered how to define the phrase "inception of the loss" for purposes of triggering section 2071 when the physical event causing the loss occurs some time before any damage is discovered by the insured. (*Prudential-LMI*, at p. 684.) According to the court, "inception of the loss" is "that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered." (*Id.* at p. 687.) The court, therefore, held " 'inception of the loss' should be determined by reference to reasonable discovery of the loss and not necessarily turn on the occurrence of the physical event causing the loss." (*Id.* at p. 686.)

"To take advantage of the benefits of a delayed discovery rule, however, the insured is required to be diligent in the face of discovered facts. The more substantial or unusual the nature of the damage discovered by the insured (e.g., the greater its deviation from what a reasonable person would consider normal wear and tear), the greater the insured's duty to notify his insurer of the loss promptly and diligently. [Citation.]" (*Prudential-LMI, supra*, 51 Cal.3d at p. 687.) Although "the date of inception of the loss will, in many cases be an issue of fact for the jury to decide[,] [w]hen . . . the evidence supports only one conclusion, summary judgment may be appropriate." (*Id.* at p. 699; see also *id.* at p. 687.)

### b. *Prudential-LMI Applies to the Instant Case*

The trial court found the "inception of the loss" definition from *Prudential-LMI* did not apply to this case because the Northridge earthquake was a cataclysmic event and the date of loss was necessarily the date of the earthquake. We disagree that *Prudential-LMI*'s definition of "inception of the loss" is so limited.

In *Prudential-LMI* the court specifically held " 'inception of the loss' should be determined by reference to reasonable discovery of loss *and not necessarily turn on the occurrence of the physical event causing the loss*." (*Prudential-LMI, supra*, 51 Cal.3d at p. 686, italics added.) The court's opinion makes plain its definition of "inception of the loss" is based on the standard form language in section 2071, which is incorporated into all fire insurance policies: "California law supports the application of the following delayed discovery rule for purposes of the accrual of a cause of action *under section 2071*." (*Prudential-LMI*, at p. 686, italics added.) The delayed discovery rule of *Prudential-LMI*, therefore, applies regardless of the nature or severity of the physical event causing the loss.

Based on the allegations in plaintiffs' second amended complaint, this is a delayed discovery case falling within *Prudential-LMI*'s definition of "inception of the loss" as the date appreciable damage has manifested and is, or should be, known to the insured. Both the original and supplemental claimants, as defined in the second amended complaint, allege the losses for which they seek policy benefits were not discovered on the date of the Northridge earthquake.[5] Thus, application of the one-year suit provision in plaintiffs' policies turns on the "point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered." (*Prudential-LMI, supra*, 51 Cal.3d at p. 687; see *Migliore v. Mid-Century Ins. Co.* (2002) 97 Cal.App.4th 592 [118 Cal.Rptr.2d 548] [recognizing, based on *Prudential-LMI*, jury finding that "inception of the loss" occurred eight months after an earthquake aftershock that caused the insured's loss].)

To be sure, based on the magnitude of the Northridge earthquake, many insureds could not help but notice appreciable damage immediately; therefore, the inception of the loss for them occurred on January 17, 1994, the date of the earthquake. (See, e.g., *Prieto v. State Farm Fire & Casualty Co.* (1990) 225 Cal.App.3d 1188, 1196 [275 Cal.Rptr. 362] [based on *Prudential-LMI*, one-year limitations provision "must be deemed to have begun running on the date of the fire, because the complaint alleges a sufficiently disastrous loss, at which plaintiffs were personally present, to alert them immediately"].) But inherent in the allegations of the second amended complaint is the premise that plaintiffs and the putative class did not discover appreciable damage for which they seek policy benefits on January 17, 1994. At least at this stage of the proceedings, we cannot say Allstate's uniform definition of January 17, 1994 as the date of the inception of the loss was proper as a matter of law.[6]

The trial court's reliance on the district court's decision in *Sullivan v. Allstate Ins. Co.* (C.D.Cal. 1997) 964 F.Supp. 1407, to avoid the holding and

---

[5]The original claimants allege they did not discover appreciable damage at all within one year of January 17, 1994, while the supplemental claimants allege they discovered additional damage, which was not discovered by Allstate adjusters evaluating their initial claims, more than one year after the earthquake, plus any period of equitable tolling of the contractual limitations period during Allstate's investigation of their initial claim. (See *Prudential-LMI, supra*, 51 Cal.3d at p. 693.) Contrary to Allstate's argument, determining the date of loss as January 17, 1994, affected the supplemental claimants by beginning the limitations period for their claims. For both categories of claimants, a delayed discovery analysis is necessary to resolve their allegations.

[6]Whether plaintiffs will be able to prove their delayed discovery allegations and demonstrate their discovery of appreciable damage was reasonable, as required by *Prudential-LMI*, remains to be seen. These determinations must be made by individual fact-specific inquiries, either on summary judgment or at trial. (*Prudential-LMI, supra*, 51 Cal.3d at pp. 687, 699 [date of inception of loss is a factual matter to be resolved by trier of fact, but summary

rationale of *Prudential-LMI* was misplaced. In *Sullivan* the insureds had acknowledged that, immediately after the earthquake, "they recognized that their home and their personal property had suffered significant damage." (*Id.* at p. 1409.) Thus, for the Sullivans, the inception of the loss under *Prudential-LMI* was properly set as the date of the earthquake. Indeed, citing *Prudential-LMI*, the *Sullivan* court recognized "[t]he one-year limitations period begins to run when the insured is aware of appreciable damage to his or her property." (*Id.* at p. 1411.) Although in dictum the court also observed, "[i]n the context of a loss caused by a single catastrophic event such as an earthquake, the date of loss can only be the date of that event" (*id.* at p. 1412), that statement, plainly at odds with *Prudential-LMI*, does not justify wholesale rejection of the delayed discovery doctrine in cases involving catastrophic events. (See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2002) ¶ 6:109.1, pp. 6A-21 to 6A-22 [criticizing *Sullivan* language because using the date of the event as the date of loss "would not be appropriate in delayed discovery cases (where the damage was not evident at the time of the event). Looking solely to the date of the event would amount to adoption of an 'injury-in-fact trigger' of coverage, contrary to the 'manifestation of loss trigger' generally applicable in first party cases" (italics omitted)].)[7]

3. *The Judgment on the Pleadings on All Three Causes of Action Alleged in the Second Amended Complaint Must Be Reversed*

██ Plaintiffs allege Allstate denied benefits that should have been paid and thus breached the insurance policies issued to plaintiffs through its improper use of the one-year suit provision. Because we find uniform use of January 17, 1994, the date of the earthquake, as the "inception of the loss" improper, the judgment on the pleadings as to the breach of contract cause of action must be reversed. It remains plaintiffs' burden, of course, to prove Allstate improperly used the one-year suit provision and, as a result, denied benefits that were due to them under their policies.

On the causes of action for bad faith and violation of Business and Professions Code section 17200, Allstate argues for affirmance even if we

judgment is appropriate when evidence supports only one conclusion].) Moreover, on remand, the trial court must decide whether these required individual fact-specific inquiries preclude class certification. (See *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 460 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223] [" ' "a group of individuals' rights to recover, each of which is based on a separate set of facts, cannot be determined by a judgment in a class action" [citation]' "].)

[7]Similarly, *Vashistha v. Allstate Ins. Co.* (C.D.Cal. 1997) 989 F.Supp. 1029 does not support the trial court's ruling. In that case the court simply repeated the *Sullivan* dictum when there was no question the insureds had not filed a timely claim although they knew about damage to the property shortly after, if not on, the date of the earthquake. (*Id.* at pp. 1030-1031, 1032.)

reverse as to the breach of contract claim. Allstate contends that, because two federal district courts reached the same conclusion regarding the "inception of the loss" for the Northridge earthquake as did the trial court here, as a matter of law it cannot be liable for bad faith or an unfair business practice for making an incorrect, but good faith, coverage decision.

Allstate's argument is doubly flawed. First, plaintiffs have alleged Allstate utilized January 17, 1994, as the uniform inception of loss date for Northridge earthquake claims knowing it was legally impermissible to do so and Allstate adopted this wrongful practice with the express purpose to deny its insureds their rights under their insurance policies. We must accept those allegations as true in the current procedural posture of this case. (*Gerawan Farming, Inc. v. Lyons, supra,* 24 Cal.4th at p. 515; *Smiley v. Citibank, supra,* 11 Cal.4th at p. 146.)

Second, notwithstanding federal district court decisions in factually distinguishable cases, the Supreme Court in *Prudential-LMI* plainly defined "inception of the loss" based on the standard form language in section 2071, which is at issue here. (*Prudential-LMI, supra,* 51 Cal.3d at p. 686.) That the trial court erred by not applying *Prudential-LMI* to the instant case cannot shield Allstate from allegations of bad faith at this stage of the litigation. (*Filippo Industries, Inc. v. Sun Ins. Co.* (1999) 74 Cal.App.4th 1429, 1441-1442 [88 Cal.Rptr.2d 881] [trial court's incorrect ruling on summary judgment does not insulate insurer from bad faith liability as a matter of law].) In addition, in light of *Prudential-LMI,* this is not a case where the defendant can escape liability under Business and Professions Code section 17200 because "conduct that the courts have deemed to be permissible . . . cannot be deemed 'unfair' under the unfair competition law." (*Chavez v. Whirlpool Corp.* (2001) 93 Cal.App.4th 363, 375 [113 Cal.Rptr.2d 175].)

## DISPOSITION

The judgment on the pleadings is reversed. The case is remanded for further proceedings not inconsistent with this opinion. Plaintiffs are to recover their costs on appeal.

Johnson, Acting P. J., and Woods, J., concurred.