Filed 9/22/14  Sperber v. State of California CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DAVID S. SPERBER, as Trustee, etc., | C073003 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201000087767CUBCGDS) |
| v. | |
| STATE OF CALIFORNIA et al., | |
| Defendants and Respondents. | |

Plaintiff David S. Sperber, trustee of the David S. Sperber Revocable Trust, purchased an office building.  The building was subject to three existing leases with defendants California Department of Transportation (Caltrans) and California Department of General Services (DGS) for office space in the building.  After Caltrans and DGS sent Sperber written notices to terminate the leases, Sperber filed a second amended complaint against those defendants and the State of California requesting declaratory relief and alleging breach of contract and anticipatory breach of contract.  Caltrans moved for summary judgment and the trial court granted the motion as to the

1

declaratory relief and anticipatory breach causes of action.  Sperber, proceeding in pro. per., appeals, challenging the leases' termination provisions.  We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2004 Sperber, an attorney, purchased an office building in Redding, California. The prior owners had entered into three separate lease agreements with Caltrans and DGS for Caltrans's use of the property.  DGS was a party to two of the three leases.  (Lease Nos. 5132-001, 5132-002.)  Caltrans was a party to only one lease.  (Lease No. RW-02109.)  Sperber assumed all three leases and in 2009 executed amended leases with both DGS and Caltrans.

**Lease No. 5132-001**

In 2002 the original property owners and DGS entered into a lease providing DGS with office space on the first floor of the building and parking spaces.  The original lease began on July 1, 2002, and ended on June 30, 2010.  A provision in the lease gave the state the right to terminate the lease any time on or after June 30, 2006, provided the state gave the lessor 30 days' written notice.

In March 2003 the original owners and DGS signed an amendment to the lease to allow the state the use of additional square footage for a two-year period between June 1, 2003, and May 31, 2005.  The amendment contained a unilateral termination clause allowing DGS to terminate on or after December 1, 2004.  The clause required the state to give the lessor 30 days' written notice of the intended termination.  In March 2005 DGS notified Sperber of its intention to terminate the amended portion of the lease pertaining to the additional office space effective April 30, 2005.

In April 2009 DGS sent Sperber a second amendment to the lease, proposing to extend the original lease for an additional two years between July 1, 2010, through June 30, 2012.  The amendment included the same terms as the original lease, including

2

the state's right to terminate at any time after 30 days' written notice. Sperber signed the second amendment to the lease.

**Lease No. 5132-002**

In May 2003 the original property owners and DGS entered into a second lease through which DGS leased office space on the second floor of the building and parking spaces. The lease ran from November 1, 2003, through October 31, 2009. A provision in the lease agreement gave the state the right to terminate the lease at any time after October 31, 2005, provided it gave the lessor written notice 30 days prior to termination.

In January 2004 the original owners and DGS amended the lease to adjust the lease's start and end dates, and to extend the lease termination date by one month. The amendment moved the date after which the state could terminate the lease from October 31, 2005, to November 30, 2005.

After Sperber assumed the lease, DGS sent him a second amendment to the lease in April 2009. The amendment extended the original lease for 31 months between December 1, 2009, and June 30, 2012. In addition, the amendment noted the same terms as the original lease, including the state's right to terminate with 30 days' written notice. Sperber signed the second amendment to the lease.

**Termination by DGS**

On November 3, 2010, DGS sent Sperber written notices to terminate both leases. Lease No. 5132-001 would expire on December 6, 2010, and Lease No. 5132-002 would expire on December 20, 2010.

**Lease No. RW-02109**

In 2002 Caltrans entered into a lease with the original property owners that covered office space on the ground floor of the building. The original lease began on November 1, 2002, and would end on June 30, 2010, unless the parties exercised their early termination rights under the agreement. The agreement provided that either party

3

might terminate the lease at any time on or after August 31, 2006, by giving written notice at least 30 days prior to termination.

After Sperber assumed the lease, Caltrans amended the lease in 2009. The amendment extended the lease term for an additional two years, through June 30, 2012. All other terms of the original lease, including the termination clause, were included.

**Termination by Caltrans**

In November 2010 Caltrans sent Sperber a 30-day written notice to terminate the lease. The termination notice informed Sperber the lease would terminate on December 20, 2010.

**Sperber's Second Amended Complaint**

Sperber filed his second amended complaint against defendants in May 2011. The complaint alleged three causes of action: declaratory relief, breach of contract, and anticipatory breach of contract. Under the declaratory relief cause of action, he sought a judicial determination under the lease agreements as to remediation of mold damage in the building and the right to terminate the lease agreements. As for the breach of contract action, Sperber claimed defendants violated the lease agreements by withholding rent and refusing to reimburse him for expenses paid in remediating the mold. Finally, Sperber's anticipatory breach of contract action alleged defendants' decisions to terminate the lease agreements before their expirations violated the lease agreements.

**Motion for Summary Judgment**

Caltrans filed a motion for summary judgment or, in the alternative, summary adjudication. A month later, DGS filed a motion for judgment on the pleadings as to the declaratory relief and anticipatory breach causes of action.

Caltrans contended no triable issues of fact existed regarding the declaratory relief and anticipatory breach causes of action since the termination clause was unambiguous, supported by case law, and consistent with public policy. DGS's motion echoed those contentions.

4

In opposing the motions, Sperber argued Caltrans acted in bad faith by entering into the lease agreement without disclosing its intention to move into another facility. He also contended Caltrans's termination violated his right to due process and equal protection. Sperber included a declaration by a real estate broker and investor, Ron Munk. Munk's declaration stated that it could take two years to lease a vacant, 20,000-square-foot building. He also stated that he had "never seen a lease with a provision for a continuously running unilateral termination of a lease by a lessee or lessor . . . ." Sperber also claimed Caltrans repudiated the lease in May 2010 when a newspaper article mentioned Caltrans's plan to move out of the building in September 2010.

In reply, Caltrans argued Sperber failed to provide any triable issue of fact to support his claim that the termination clause was unconscionable. Caltrans pointed out that Sperber, a licensed attorney acting on his own behalf, failed to modify the termination clause when the parties amended the lease in 2009. In addition, Caltrans contended Munk's declaration regarding termination clauses was irrelevant.

**Trial Court's Rulings**

Following a hearing, the trial court issued an order granting Caltrans's motion for summary adjudication on the declaratory relief and anticipatory breach of contract causes of action but denying the motion as to the breach of contract cause of action. The court issued an order granting DGS's motion for judgment on the pleadings as to the declaratory relief and anticipatory breach causes of action. Subsequently, the parties settled the action, with Sperber agreeing to dismiss with prejudice the breach of contract cause of action regarding mold remediation. Sperber reserved the right to appeal the dismissal of the declaratory relief and anticipatory breach of contract causes of action.

The trial court issued its final order as to the Caltrans motion for summary adjudication. The court declined Sperber's request to continue the motion until he could complete additional discovery, finding he failed to show diligence in completing

discovery, to identify prospective deponents, or to establish how any such testimony would assist him in opposing the motion.

As to the declaratory relief cause of action, the court found the 30-day written notice of termination is consistent with Civil Code section 1946. The court noted Sperber presented no evidence that he attempted to modify the termination provision when the parties amended the lease agreement. Finally, the court concluded the termination provision was not ambiguous, unconscionable, or executed in bad faith.

The trial court also declined to impose a covenant of good faith and fair dealing because the lease between the parties did not require good cause to terminate. The court also concluded that Munk's declaration did not raise a triable issue of fact. The interpretation of a contract is a matter of law for the trial court to determine; expert opinion is not necessary to interpret an explicit termination clause. Sperber's subjective belief that Caltrans would not terminate the lease did not render the termination clause unconscionable. Nor did any anticipatory breach occur because Caltrans provided written notice of termination in compliance with the lease agreement.

Following entry of judgment, Sperber filed a timely notice of appeal.

## DISCUSSION

## I.

## Standard of Review

Sperber challenges the trial court's granting of DGS's motion for judgment on the pleadings and Caltrans's motion for summary adjudication of the declaratory relief and anticipatory breach causes of action.

We review the trial court's granting of summary adjudication de novo. The moving party is entitled to summary adjudication if the record establishes as a matter of law that some or all of the plaintiff's asserted causes of action cannot prevail. We consider all the evidence offered in connection with the motion, except evidence properly excluded by the trial court. (*Miscione v. Barton Development Co.* (1997) 52 Cal.App.4th

1320, 1324-1325 (*Miscione*); *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1067.)

We begin by reviewing the pleadings and determining whether the moving party has met its burden of showing the plaintiff's causes of action have no merit. Once this burden is met, the burden shifts to the plaintiff to show a triable issue of fact exists. If the plaintiff's opposition fails to demonstrate material triable issues of fact, the motion must be granted. (*Miscione*, *supra*, 52 Cal.App.4th at p. 1325.)

In reviewing a motion for judgment on the pleadings, we determine whether the complaint states a cause of action. We accept as true the facts alleged in the complaint and review the issues de novo. (*Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 602; *Angelucci v. Century Supper Club* (2000) 41 Cal.4th 160, 166.) In addition, we treat all properly pleaded facts as true. (*Kapsimallis v. Allstate Ins. Co.* (2002) 104 Cal.App.4th 667, 670, fn. 1.)

## II.

### The Unilateral Termination Provisions Are Not Unconscionable

Sperber argues the unilateral termination clauses in the three lease agreements are unconscionable and therefore unenforceable. In essence, Sperber contends: "For anyone especially a state agency to renew a lease for space for a period of two years within an existing facility built out for the agency pursuant to its plans and specifications [citations], without disclosing it is currently planning to find much more expensive new quarters, and move in less than two years, is not just a denial of the reasonable expectation of the party with the weaker bargaining power, but an unconscionable act within section 1670.5 of the Civil Code [citation]." According to Sperber, defendants' lease cancellations were "a cover to obtain brand new more expensive quarters than existing ones, or 'get even' with a lessor having insisted he too had rights under the law."

However, each of the three lease agreements clearly and unambiguously provides that, in the case of the DGS leases, DGS may unilaterally terminate, and in the case of the

7

Caltrans lease, either party may terminate the lease any time after a specified date by giving written notice to the other party at least 30 days prior to the date of termination. As the trial court noted, although each lease was subsequently amended, Sperber made no attempt to alter any of the termination clauses.

Parties to a contract may agree on terms authorizing one party to terminate the agreement before the agreement's stated expiration date by giving the other party the required notice. In such cases, there is no requirement that the party seeking to end the contract show good cause for termination. Imposition of such a requirement would "result in the obliteration of a right expressly given under a written contract." (*Gerdlund v. Electronic Dispensers International* (1987) 190 Cal.App.3d 263, 277.) Moreover, the 30-day notice period contained in the lease agreements is consistent with Civil Code section 1946, which requires 30 days' written notice for month-to-month tenancies. Therefore, the trial court correctly concluded that the covenant of good faith and fair dealing did not apply to the leases in question.

Sperber claims the leases were terminated for nefarious purposes–to move to brand-new quarters and to get even with him for pursuing his rights. However, Sperber's subjective belief that defendants would not terminate pursuant to the written agreement does not make the contract provision unconscionable or a violation of his constitutional rights. " '[T]wo general types of contract rights are recognized as property protected under the Fourteenth Amendment: (1) where "the contract confers a protected status, such as those 'characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits' "; or (2) where "the contract itself includes a provision that the state entity can terminate the contract only for cause." ' " (*Benn v. County of Los Angeles* (2007) 150 Cal.App.4th 478, 490.) Neither situation applies in the present case. The trial court did not err in granting summary adjudication on the first cause of action for declaratory relief.

8

# III.

## Defendant's Valid Compliance with the Termination Provisions of the Leases Does Not Constitute Anticipatory Breach of Contract

In his third cause of action, Sperber alleged anticipatory breach of contract. On appeal, he argues defendants' termination of the leases was in retaliation for his right to redress grievances against the state.

An anticipatory breach of contract occurs when a party repudiates the contract by acts or statements. As a matter of definition, an anticipatory breach occurs when the agreement is repudiated by the promisor before the promisor's performance under the contract is due. (*Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 514.)

Here, defendants exercised their right to terminate the leases under the contract provision. Defendants complied with the 30-day notice requirement. As the trial court correctly concluded, no anticipatory breach occurred.

On appeal, Sperber briefly contends the lease termination clauses were void because they were unenforceable adhesion provisions. Contracts of adhesion are unenforceable if the contract provisions do not fall within the reasonable expectations of the adhering party and enforcement would be unduly oppressive or unconscionable. (*Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 820.) However, Sperber fails to develop this contention. Instead, he simply states the termination provisions were ambiguous and that "[t]he declared facts show plaintiff, who is simply an attorney, lacks the power or financial resources of the State of California, and that plaintiff received nothing of value by obligating himself to an agreement not more than an option to the DGS to remain in possession of the property it already was in possession at no increase in rent, while DGS was planning to vacate the premises when it found something else to its liking and to the significant detriment of plaintiff, who was a bona fide purchaser for value of the property."

9

The lease termination clauses are both straightforward and reasonable. Courts have held that unilateral termination clauses in commercial leases are enforceable even when the nonterminating party stands to lose substantial benefits as a result of the termination. (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 363.) Sperber's complaint fails to set forth facts establishing that the termination provisions are oppressive or unconscionable. Nor does the complaint set forth facts that show the termination provision did not fall within his reasonable expectation of the contract. Sperber is a practicing attorney who willingly agreed to the termination amendments in each lease.

## DISPOSITION

The judgment is affirmed. Defendants shall recover costs on appeal.

                                          RAYE          , P. J.


We concur:



        ROBIE        , J.



        MAURO        , J.

10